UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

CLARENDON NATIONAL INSURANCE COMPANY
and CLARENDON AMERICA INSURANCE         11 Civ. 2629 (HB)
COMPANY,
                                        **OPINION AND ORDER**
                Plaintiffs,

        -against-

JAMES C. CULLEY and JAMES K. CULLEY,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

      Before the Court is a motion for summary judgment brought by Defendants James K. Culley ("Jim Culley") and James C. Culley ("Chris Culley," and together with Jim Culley, "Defendants"). In their complaint, Plaintiffs Clarendon National Insurance Company and Clarendon America Insurance Company (collectively, "Plaintiffs" or "Clarendon") allege claims against Jim Culley and Chris Culley for premiums allegedly guaranteed by Defendants, which were misappropriated by third-parties. For the reasons set forth below, Defendants' motion for summary judgment is GRANTED.

## I. BACKGROUND[1]

      Clarendon is an insurance company that stopped issuing policies in 2006. Defs.' 56.1 ¶ 1; Pls.' 56.1 ¶ 1. In 1993, Clarendon contracted with Marion Insurance Agency, Inc. ("Marion") to act as Clarendon's general agent for the issuance of insurance policies, primarily for physical damage to trucks. Defs.' 56.1 ¶ 11; Pls.' 56.1 ¶ 11. Marion was founded by Jim Culley. Defs.' 56.1 ¶ 12; Pls.' 56.1 ¶ 12. In May 1993, Marion and Clarendon entered into a general agency agreement ("Marion GAA"). Defs.' 56.1 ¶ 13; Pls.' 56.1 ¶ 13. Chris Culley, Jim's son, began working at Marion in 1998, Defs.' 56.1 ¶ 16; Pls.' 56.1 ¶ 16, and in 2001, became President of Insurer's Unlimited, Inc. ("IUI"), Marion's successor, which began operating in 2000 or 2001.

---

[1] This section is intended for background purposes. Additional facts are discussed where they are relevant.

1

Defs.' 56.1 ¶¶ 17-19; Pls.' 56.1 ¶¶ 17-19.[2] Marion's transition to IUI occurred because Jim Culley thought that IUI was a better name than Marion and IUI's corporate structure made it easier for employees to become shareholders. Defs.' 56.1 ¶¶ 20, 21; Pls.' 56.1 ¶¶ 20, 21.

The parties dispute whether the terms of the Marion GAA governed the IUI relationship with Clarendon until 2005, Defs.' 56.1 ¶ 19, or whether Clarendon and IUI entered into a new general agency agreement in the fall of 2003, which was effective October 1, 2003. Pls.' 56.1 ¶ 19. In September 2003, Jim Culley signed what Defendants characterize as a draft guaranty ("2003 GAA"); however, neither IUI nor Clarendon signed this document. Defs.' 56.1 ¶¶ 26, 29; Pls.' 56.1 ¶¶ 28-29. One provision of the 2003 GAA required IUI to remit to Clarendon all premiums due to Clarendon whether or not such premiums were collected by IUI. 2003 GAA ¶ 4.2(a). The parties dispute whether the subsequent general agency agreement entered into in 2005 ("2005 GAA") was merely an "amended and restated version" of the 2003 GAA, Pls.' 56.1 ¶ 33, or was the sole fully executed general agency agreement that replaced the original Marion GAA, which was signed back in 1993. Defs.' 56.1 ¶ 33. Chris Culley guaranteed the 2005 GAA. 2005 GAA 43. Both the 2003 GAA and the 2005 GAA contained guarantees stating that the "Guarantor hereby unconditionally guarantees . . . full and prompt payment of Trust Funds as and when they are due and payable pursuant to the Agency Agreement." 2003 GAA 41; 2005 GAA 42. Each of the general agency agreements states that it will be governed by the laws of New York. Marion GAA 17; 2003 GAA ¶ 9.6; 2005 GAA ¶ 9.6.

IUI was the victim of two separate frauds by third parties, one in Georgia and one in Texas. Between 1999 and 2002, the owners of Insurance Interchange, one of IUI's Georgia wholesalers, stole between $1.6 and $1.9 million. Defs.' 56.1 ¶ 40; Pls.' 56.1 ¶ 40. By January 2002, the owners of Insurance Interchange had misappropriated all of the premiums due and payable to Clarendon in the Georgia fraud. Defs.' 56.1 ¶ 40; Pls.' 56.1 ¶ 40. In a separate fraud, between 2000 and 2004, the owners of a Texas wholesaler misappropriated approximately $600,000 from IUI. Defs.' 56.1 ¶ 42; Pls.' 56.1 ¶ 42. This money was stolen on or before December 31, 2004. Defs.' 56.1 ¶ 48; Pls.' 56.1 ¶ 48. It is undisputed that all the breaches

---

[2] Plaintiffs' 56.1 Statement indicates that IUI began operating on January 1, 2001, while Defendants' 56.1 Statement indicates that IUI began operating sometime during 2000 or 2001.

stemming from these two frauds occurred on or before December 31, 2004. Defs.' 56.1 ¶ 50; Pls.' 56.1 ¶ 50.[3]

## II. DISCUSSION

### A. Legal Standard

Summary judgment shall be granted in favor of a movant where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court must resolve all ambiguities and draw all inferences against the moving party. *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 205 (2d Cir. 2005). The movant bears the burden of establishing the absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A material fact "might affect the outcome of the suit under the governing law," and an issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001) (citation and quotation omitted). "The party against whom summary judgment is sought . . . 'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is *a genuine issue for trial*.' " *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

Federal courts sitting in diversity apply the substantive law of the forum state on dispositive issues. *Erie R. Co. v. Tomkins*, 304 U.S. 64, 78-80 (1938); *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994). Procedural matters are governed by federal law. *See Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S. 415, 427 (1996).

### B. There is No Genuine Issue of Material Fact with Respect to whether Clarendon's Claims are Barred by the Statute of Limitations

I need not determine whether the 2003 GAA actually formed a valid contract, because even assuming that it did, Clarendon's claims against both Jim Culley and Chris Culley are

---

[3] Although Plaintiffs' 56.1 Statement disputes the second portion of paragraph 50, the date of discovery of the breaches by IUI, it does not dispute that all the breaches had occurred on or before December 31, 2004. *See* Pls.' 56.1 ¶ 50.

barred by the applicable statute of limitations.[4]

### 1. Clarendon's Claims are Time-Barred

The statute of limitations applicable to guarantees is "the six-year period applicable to contracts generally under CPLR 213." *Am. Trading Co. v. Fish*, 42 N.Y.2d 20, 26 (1977), *cited by Kantor v. Mesibov*, 824 N.Y.S.2d 755 (Sup. Ct. 2006). As noted above, it is undisputed that all the breaches from the Georgia and Texas schemes occurred on or before December 31, 2004. Defs.' 56.1 ¶ 50; Pls.' 56.1 ¶ 50.

Clarendon's argument that it lacked knowledge about the schemes until much later, a disputed fact, is without merit in any event. *Compare* Defs.' 56.1 ¶¶ 41, 45 (noting that IUI sued for fraud and conversion on the Georgia scheme in 2005 and that Defendants went to New York in January or February 2005 to inform Clarendon of the Texas scheme), *with* Pls.' 56.1 ¶ 50 (noting that Clarendon did not learn of the Texas fraud until May 13, 2005 and Clarendon did not learn of the Georgia fraud until 2006). "[A] cause of action for breach of contract accrues and the statute of limitations commences when the contract is breached." *T & N PLC v. Fred S. James & Co. of NY*, 29 F.3d 57, 59 (2d Cir. 1994). "Knowledge of the occurrence of the wrong on the part of the plaintiff is not necessary to start the Statute of Limitations running in [a] contract [action]." *Id.* at 60 (quoting *Ely-Cruikshank Co. v. Bank of Montreal*, 599 N.Y.S.2d 501, 503 (1993)). Since the breaches at issue in this case on both the Georgia and Texas schemes occurred on or before December 31, 2004, Clarendon would have had to bring this action on or before December 31, 2010, at the latest. Instead, this action was not commenced until April 16, 2011. Compl.

### 2. Clarendon is Not Entitled to Equitable Estoppel or Equitable Tolling

Clarendon contends that the statute of limitations begins "running not from the time of IUI's breach but from the time of Clarendon's *discovery* of the breach," Pls.' Opp. 4, because

---

[4] Because I conclude that the statute of limitations bars Plaintiffs' claims, I need not consider Defendants' remaining arguments for dismissal, that the 2003 GAA was only a draft and so is not enforceable against Jim Culley and that the claim against Chris Culley must be dismissed because the alleged obligations are outside the scope of the 2005 GAA. *Watson v. Riptide Worldwide, Inc.*, 11 Civ. 0874, 2012 WL 383946, at *6 (S.D.N.Y. Feb. 7, 2012) (declining to consider additional arguments after finding that plaintiffs' claims were barred by the statute of limitations and equitable tolling was not justified); *In re MBIA Inc.*, 05 Civ. 3514, 2007 WL 473708, at *9 (S.D.N.Y. Feb. 14, 2007) ("Because plaintiffs' claims are barred by the statute of limitations applicable to private securities fraud claims, the court need not consider defendants' other arguments for dismissal.").

Defendants used the first-in-first-out ("FIFO") accounting method[5] to "cover up the unremitted premium[s] they knew they owed Clarendon." *Id.*[6] As a result, Clarendon argues that Defendants are "equitably estopped" from pleading the statute of limitations as a defense. *Id.* at 23.

"New York appears to use . . . equitable estoppel to cover both the circumstances where the defendant conceals from the plaintiff the fact that he has a cause of action [and] where the plaintiff is aware of his cause of action, but the defendant induces him to forego suit until after the period of limitations has expired." *Pearl v. City of Long Beach*, 296 F.3d 76, 82 (2d Cir. 2002) (citation and quotation omitted). Under either theory, Plaintiffs' argument fails. The latter circumstance, in which the plaintiff knows of the cause of action, but "the defendant takes active steps to prevent the plaintiff from suing in time" such as by promising not to plead the statute of limitations or by some wrongdoing, is clearly not applicable here as no such circumstances are alleged. *Id.* at 81 (quoting *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450–51 (7th Cir. 1990)); *see Muro v. UBS Fin. Servs.*, 331 Fed Appx. 886, 887 (2d Cir. 2009) ("[T]he doctrine of equitable estoppel does not apply . . . because there is no evidence that plaintiff was induced by fraud, misrepresentation or deception to refrain from filing a timely action.").

Rather, Plaintiffs' argument is that the Defendants engaged in "fraudulent concealment of a cause of action," a form of equitable estoppel that provides for equitable tolling of the statute of limitations. *Pearl*, 296 F.3d at 82. "Under this doctrine, the statute does not begin to run until the plaintiff either acquires actual knowledge of the facts that comprise his cause of action or should have acquired such knowledge through the exercise of reasonable diligence." *Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 48 (2d Cir. 1985) (citation and quotation omitted). Plaintiffs allege that Defendants' use of the FIFO accounting method constituted a breach of fiduciary duty and covered up the Texas and Georgia schemes until May 2005 and

---

[5] FIFO, an accounting method through which the oldest items are recorded as sold first, is one of two accounting methods permitted under Generally Accepted Accounting Principles ("GAAP"). Last-in-last-out ("LIFO"), in which the most recently produced items are recorded as sold first, is the other. *See* William W. Brattona1 and Lawrence A. Cunningham, *Treatment Differences and Political Realities in the GAAP-IFRS Debate*, 95 VA. L. REV. 989, 997 (June 2009) ("GAAP permits companies to choose [between FIFO and LIFO]; IFRS [International Financial Reporting Standards], with its regime of balance sheet primacy, requires FIFO.").

[6] Clarendon also argues that Defendants should be equitably estopped from using the statute of limitations defense because the Georgia and Texas frauds were committed by Defendants' sub-agents. Pls.' Opp. 4. Although Clarendon mentions this argument in the fact section of its brief, it provides no legal explanation as to why, if applicable, equitable estoppel applies here.

November 2006, respectively. Equitable tolling is commonly applied in the context of breach of fiduciary duty claims. *See, e.g.*, *Menke v. Glass*, 898 F. Supp. 227, 232-33 (SDNY 1995) (tolling the statute of limitations until the plaintiffs had actual or constructive knowledge of the breach). The complaint in this case, unlike the complaints in the three cases cited by Plaintiffs for the proposition that tolling due to Defendants' alleged breach of fiduciary duty is appropriate, does not include any claim for breach of fiduciary duty. *See* Pls.' Opp. 23 (citing cases). I am at a loss to divine, and Plaintiffs fail to explain, how the use of the FIFO accounting method amounted to a breach of fiduciary duty that violated the terms of the general agency agreements. There is nothing in those agreements that dictates the acceptable accounting method or prohibits FIFO.[7] Indeed, Plaintiffs failed to even plead breach of fiduciary duty in their claims, to say nothing of the fact that FIFO is a generally accepted accounting method. *See supra* n.5. Equitable tolling is not appropriate.

### 3. The Purported Waiver of the Statute of Limitations is Invalid

Clarendon also argues that Defendants waived their statute of limitations defense in that both the 2003 GAA and the 2005 GAA waived "any right to interpose a defense based upon any statute of limitations or claim of laches." *See* Pls.' Opp. 21; 2003 GAA 41 ¶ 1; 2005 GAA 42 ¶ 1. Although unconditional guarantees may bar the assertion of certain affirmative defenses, *see, e.g.*, *Bank of N.Y. v. Tri Polyta Fin. B.V.*, 01 Civ. 9104, 2003 WL 1960587, at *4 (S.D.N.Y. Apr. 25, 2003), they must conform to New York's General Obligations Law ("GOL") § 17-103(1), which provides several caveats which run afoul of Plaintiffs' theory. *John J. Kassner & Co. v. N.Y.*, 46 N.Y.2d 544, 550 (1979); *see also* GOL § 17-103(3) ("A promise to waive, to extend, or not to plead the statute of limitation has no effect to extend the time limited by statute for commencement of an action or proceeding for any greater time or in any other manner than that provided in this section, or unless made as provided in this section.").

First, as to the 2003 GAA, the causes of action had not accrued in their entirety at the time that document was signed by Jim Culley, assuming a valid contract was even formed. More importantly, the waivers in both the 2003 GAA and 2005 GAA were indefinite, rather than for a

---

[7] Plaintiffs vaguely allude to the use of FIFO as a violation of the general agency agreement, although precisely which agreement is not clear. Pls.' Opp. 4 (noting that the use of FIFO was a "violation of the GAA"). Plaintiffs state that the use of FIFO violated a provision of the GAA requiring IUI "to pay all billed but uncollected premium to Clarendon 90 days after it was due," Pls.' Opp. 20, (a provision contained in both the 2003 and 2005 GAA) but fail to explain why the use of FIFO caused Defendants to violate this provision or how this might otherwise constitute a breach of their fiduciary duty.

period of time equal to or shorter than the original statute of limitations. 2003 GAA 41 ¶ 1; 2005 GAA 42 ¶ 1. Several courts have concluded that an agreement to waive the statute of limitations that fails to comply with GOL § 17-103(1) is not enforceable. *T & N PLC*, 29 F.3d at 62 (concluding that agreement extending the statute of limitations indefinitely was "invalid and unenforceable"); *Bayridge Air Rights, Inc. v. Blitman Constr. Corp.*, 80 N.Y.2d 777, 779-80 (1992) ("As the present agreement purported to extend the limitations period to an indefinite date in the future in contravention of the six-year maximum provided by the statute, it cannot be enforced according to its terms.").[8] I see no reason why my conclusion should be any different here, where there was an indefinite statute of limitations waiver in a Guaranty as part of a general agency agreement, which is merely a specific type of contract. The waivers of the statute of limitations in the 2003 GAA and 2005 GAA are unenforceable.[9]

### III. CONCLUSION

The Court has considered the parties' remaining arguments and finds them without merit. Defendants' motion for summary judgment is GRANTED. The Clerk of the Court is instructed to close the motion, close the case and remove it from my docket.

SO ORDERED.

April 25, 2012
New York, New York

_____
HAROLD BAER, JR.
**United States District Judge**

---

[8] Even if I were to instead extend the statute of limitations period from the date of the later 2005 GAA to the maximum allowable by statute, six years, the latest date for filing this action would have been March 2011 and the Plaintiffs still would have been too late. In any event, for me to rewrite this contract would likely be error. *See Bayridge*, 80 N.Y.2d at 780 (rejecting plaintiff's request that the court rewrite the agreement so that the extension was lawful).

[9] The cases cited by Plaintiffs are not to the contrary. The first case, *Sterling National Bank v. Biaggi*, 849 N.Y.S.2d 521 (1st Dep't 2008), did not need to reach the issue of whether an indefinite waiver was permissible because the court held that there was no triable issue of material fact. To the extent the court did hold that a complete, indefinite waiver of a statute of limitations defense was valid, the court would appear to be in error as the authority it cited did not so hold and there was contrary binding authority. The second, *Federal Deposit Insurance Corp. v. Schwartz*, 432 N.Y.S.2d 899, 901 (2d Dep't 1980), does not mention a waiver of a statute of limitations defense at all.